**INTERNATIONAL KORWIN CORP., et al., Plaintiffs–Appellees,**

v.

**Tadeusz KOWALCZYK, Defendant–Appellant.**

No. 87–2376.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1988.

Decided Aug. 16, 1988.

Irene Savanis, Jones, Day, Reavis & Pogue, Chicago, Ill., for defendant-appellant.

Monica L. Thompson, Keck, Mahin & Cate, Chicago, Ill., for plaintiffs-appellees.

Before RIPPLE, MANION and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Tadeusz Kowalczyk appeals the district court's determination that his multiple violations of federal copyright law were willful. In addition, he challenges the amount of the fine and fees imposed by the district court. We affirm the judgment of the district court.

## I

## Background

### A. *Procedural Posture*

The plaintiffs, music publishers and owners of the copyrighted songs at issue here, are members of the American Society of Composers, Authors and Publishers (AS-CAP).[1] In their complaint, the plaintiffs allege that Mr. Kowalczyk, the sole proprietor of the Orbit Restaurant in Chicago, violated their rights as set forth in the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* Specifically, the complaint asserts

---

**1.** ASCAP was organized by a small group of composers in 1914

because those who performed copyrighted music for profit were so numerous and widespread, and most performances so fleeting, that as a practical matter it was impossible for the many individual copyright owners to negotiate with and license the users and to detect unauthorized uses. "ASCAP was organized as a 'clearing-house' for copyright owners and users to solve these problems" associated with the licensing of music. [*Columbia Broadcasting Sys. v. ASCAP,*] 400 F.Supp. 737, 741 (SDNY 1975). As ASCAP operates today, its 22,000 members grant it nonexclusive rights to license nondramatic performances of their works, and ASCAP issues licenses and distributes royalties to copyright owners in accordance with a schedule reflecting the nature and amount of the use of their music and other factors.... [ASCAP] operate[s] primarily through blanket licenses, which give the licensees the right to perform any and all of the compositions owned by the members or affiliates as often as the licensees desire for a

stated term. Fees for blanket licenses are ordinarily a percentage of total revenues or a flat dollar amount, and do not directly depend on the amount or type of music used. *Broadcast Music, Inc. v. Columbia Broadcasting Sys.,* 441 U.S. 1, 4–5, 99 S.Ct. 1551, 1554–55, 60 L.Ed.2d 1 (1979).

To protect the copyrighted musical compositions within its repertoire,

ASCAP has district offices, and the district manager of each office is responsible for contacting establishments in that district where music is played and offering the opportunity to obtain the rights to perform ASCAP musical compositions through licensing agreements. When ASCAP discovers that an establishment is playing musical compositions copyrighted by an ASCAP member, the owner of the establishment is notified of the copyright infringement and ASCAP offers to license the use of ASCAP music to the establishment.

*Halnat Pub. Co. v. L.A.P.A., Inc.,* 669 F.Supp. 933, 934 (D.Minn.1987) (citation omitted).

that Mr. Kowalczyk, without a license to do so, publicly performed (by radio broadcast and live rendition) seven copyrighted songs on the evening of August 21, 1983. On October 22, 1985, the district court denied the plaintiffs' motion for summary judgment. A two-day bench trial followed. At the conclusion of the trial, the court found Mr. Kowalczyk to have infringed willfully the copyright of all seven songs. The court enjoined Mr. Kowalczyk from further performances of those compositions without a license, imposed a fine of $10,500 ($1,500 for each infringement), awarded attorney's fees to the plaintiffs in the amount of $21,502.75, and assessed costs at $1,693.88. Mr. Kowalczyk then timely filed this appeal.[2]

### B. *Facts*

The Orbit Restaurant is divided into three areas: a dining room, a coffee shop, and a bar. In order to entertain his customers, Mr. Kowalczyk purchased an audio receiver to play radio broadcasts throughout the three areas of the restaurant. The audio receiver was located in Mr. Kowalczyk's office and was tuned primarily to Chicago radio station "FM 100." The receiver was connected by concealed wire to eight speakers, placed throughout the establishment, which were recessed into the ceiling of the restaurant. Mr. Kowalczyk also permitted two musicians to play music for tip money three times a week. The musicians were not paid a salary by Mr. Kowalczyk.

Beginning in 1980, ASCAP repeatedly contacted Mr. Kowalczyk in an effort to convince him to purchase a license to broadcast ASCAP-copyrighted songs routinely transmitted over the radio. As the district court explicitly found:

> The contacts, as evidenced by the AS-CAP District Office file, included letters, phone calls, and personal visits to the Orbit spread over a three year period. In the course of these contacts, ASCAP offered defendant an ASCAP license to perform the ASCAP repertoire. ASCAP also informed defendant that the public performance of copyrighted musical compositions without an ASCAP license or the copyright owner's permission constitutes copyright infringement in violation of federal law. In response to ASCAP's inquiries defendant vowed never to join ASCAP and told ASCAP representatives to sue him.

*International Korwin Corp. v. Kowalczyk*, 665 F.Supp. 652, 655–56 (N.D.Ill.1987) (footnote omitted).

Frustrated by Mr. Kowalczyk's refusal to purchase a license, ASCAP sent two investigators to the Orbit. On August 21, 1983, the investigators noted that six AS-CAP–copyrighted songs were broadcast over the Orbit sound system.[3] In addition, the investigators noted that the two musicians performed a live rendition of another copyright protected song that same evening.[4]

## II

### Opinion of the District Court

In setting forth the facts of the case, the district court detailed the technical capabilities of the Orbit's "Grommes" audio receiver. The district court noted that the receiver "has paging capabilities and possesses three sets of speaker terminals: 8 ohms, 25 volts, and 70 volts. The receiver is capable of driving up to 40 speakers." *Kowalczyk*, 665 F.Supp. at 655. The court then found credible the testimony of ASCAP's expert witness, Daniel E. Hart, that "the receiver was not of a type commonly used in private homes." *Id.* The court also noted the

---

**2.** Jurisdiction in the district court is based on 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... copyrights...."). Jurisdiction in this court is based on 28 U.S.C. § 1291.

**3.** The songs broadcast over the Orbit sound system on August 21, 1983 were: "Chances Are"; "Tangerine"; "Charade"; "Play Me"; "Bewitched"; and "Dear Heart." *Kowalczyk*, 665 F.Supp. at 655.

**4.** The song performed live on August 21, 1983 was "Speak Softly Love (a/k/a Love Theme From The Godfather)." *Kowalczyk*, 665 F.Supp. at 655.

physical size of the Orbit (2,664 square feet of publicly accessible space) and its annual revenues (grossing between $583,000 to $919,000 from 1980 to 1985—$35,000 to $136,000 net profit). Based on these facts, the court concluded that "the Orbit has sufficient space and generates enough revenue to justify the use of a commercial background music service." *Id.* In addressing the legal issues, the district court began by noting:

> Section 106(4) of the Act grants copyright owners the exclusive right to publicly perform or authorize the performance of their copyrighted works. The Act broadly defines "perform" to include the rendition or playing of a work "either directly or by means of any device or process." 17 U.S.C. § 101. To perform "publicly" means to perform at a place open to the public. *Id.*

*Id.* at 656. Applying the language of the statute, the court determined that the live performance by the two musicians violated the plaintiffs' exclusive copyrights. The court further held that a proprietor is liable for his entertainers performing copyrighted works, even if he is unaware of the violation.

Turning to the radio performances, the district court addressed Mr. Kowalczyk's defense that he was protected by a statutory exemption for small businesses. The exemption, 17 U.S.C. § 110(5),[5] as interpreted by the court, has three basic requirements for application: (1) the receiving apparatus must be of a kind that is commonly used in private homes; (2) the performances must not be further transmitted to the public; and (3) the business must be a small commercial establishment. The district court held that Mr. Kowalczyk had failed to satisfy even one of these requirements. *See Kowalczyk*, 665 F.Supp. at 657–58. Specifically, concerning the first factor—that the receiving apparatus be of a kind commonly used in private homes—the district court found that ASCAP's expert witness, Daniel E. Hart, testified "that defendant's Grommes receiver, with features and power typical of a commercial receiver, is clearly *not* the type of receiver commonly used in the home. In addition, the commercial style receiver is attached via built-in concealed wiring to eight remote ceiling mounted speakers; hardly the type of sound system *commonly* found at home, even in today's high-tech world." *Id.* at 657 (emphasis in original). As to the second criterion—further transmission to the public—the district court relied on the plain language of the statute to determine that the radio broadcasts were further transmitted inside the Orbit.[6] The court reasoned that the receiver was located in Mr. Kowalczyk's office and the speakers were dispersed throughout the restaurant. Consequently, the concealed wires that carried the sound from the receiver to the speakers fell within the definition of further transmission. Finally, concerning the third factor—small commercial establishment—the district court examined the legislative history surrounding section 110(5) to conclude that the Orbit was not the type of small commercial establishment that Congress intended to exempt from the copyright laws.[7] Accordingly, the court found Mr. Kowalczyk liable for the radio performances as well.

---

5. Section 110(5) of Title 17 of the United States Code provides in pertinent part that notwithstanding the otherwise exclusive rights vested in the copyright owner:

   > [C]ommunication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of a kind commonly used in private homes [does not constitute a copyright infringement], unless—
   > (A) A direct charge is made to see or hear the transmission; or
   > (B) The transmission thus received is further transmitted to the public. . . .

   17 U.S.C. § 110(5).

6. The district court relied on the Copyright Act's definition of "to transmit," which provides:

   > To "transmit" a performance or display is to communicate it by any device or process whereby images or sounds are received beyond the place from which they are sent. 17 U.S.C. § 101.

7. The district court explained that the exemption was the result of the Supreme Court's decision in *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975). In *Aiken*, the Court determined under the Copyright Act of 1909 that a fast food restaurant did not violate the copyright laws by playing a radio station to entertain its customers. The restaurant in *Aiken*, however, had only 620

The district court next addressed the appropriate remedy. First, it enjoined further performances of the seven copyrighted musical compositions. The court then awarded statutory damages, in lieu of actual damages, at the plaintiffs' request. In determining the amount of damages, the court focused on "the willfulness of the defendant's conduct, and the deterrent value of the sanction imposed." *Id.* at 658. The district court found that Mr. Kowalczyk's "cavalier" attitude in dismissing AS-CAP's repeated warnings to obtain a license constituted willful conduct. As a result, it imposed fines of $1,500 per performance.[8] The court then awarded attorney's fees and costs pursuant to the explicit statutory authority contained in 17 U.S.C. § 505.[9]

## III

## Analysis

### A. *Willful Infringement*

#### 1. Contentions of the Parties

Mr. Kowalczyk does not contest the district court's finding that he violated the plaintiffs' copyrights. Nor does he challenge the court's determination that the section 110(5) exception was inapplicable. Instead, he contends only that the court's finding that he willfully infringed the plaintiffs' copyrights was clearly erroneous. *See* Appellant's Reply Br. at 2. Specifically, he contends that the court improperly relied *"solely* on the fact that Kowalczyk refused to enter into a licensing agreement with ASCAP." Appellant's Br. at 15 (emphasis in original). He asserts that he relied in good faith on the section 110(5) exemption in not purchasing a license from ASCAP. He argues that, even though the exemption may not have applied, the district court should have addressed whether he reasonably relied upon it and therefore is not guilty of willful infringement. In contrast, the plaintiffs contend that the district court properly concluded that Mr. Kowalczyk willfully violated the Copyright Act. Moreover, they stress that the district court found that Mr. Kowalczyk's proffered "good faith" reliance on the section 110(5) exemption is not credible.

#### 2. Analysis

In asking this court to reverse the trial court's determination that his violation was

square feet open to the public. In addition, its broadcasting system consisted "of a home receiver with four ordinary loudspeakers grouped within a relatively narrow circumference from the set...." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 87, *reprinted in* 1976 *U.S.Code Cong. & Admin.News,* 5659, 5701. As the legislative history of the exemption indicates:

> It is the intent of the conferees that a small commercial establishment of the type involved in *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975), which merely augmented a home-type receiver and which was not of sufficient size to justify, as a practical matter, a subscription to a commercial background music service, would be exempt. However, where the public communication was by means of something other than a home-type receiving apparatus, or where the establishment actually makes a further transmission to the public, the exemption would not apply.

H.R.Conf.Rep. No. 1733, 94th Cong., 2d Sess. 75, *reprinted in* 1976 *U.S.Code Cong. & Admin. News,* 5810, 5816. Consequently, the *Aiken* case "represent[s] the outer limit of the exemption ... and the line should be drawn at that point." H.R.Rep. No. 1476, *supra,* 1976 U.S.Code Cong. & Admin.News, at 5701. The district court determined that given the greater physical size of the Orbit, its greater revenues, and its greater number of speakers (than the establishment in *Aiken*), Congress could not have intended to exempt from the copyright laws a restaurant like the Orbit.

8. Section 504(c) of Title 17 of the United States Code provides in relevant part:

> (1) Except as provided by clause (2) of this subsection, the copyright owner may elect ... an award of statutory damages ... in a sum of not less than $250 or more than $10,000 as the court considers just....
> (2) In a case where the copyright owner sustains the burden of proving, *and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $50,000.*

17 U.S.C. § 504(c) (emphasis supplied).

9. Section 505 of Title 17 of the United States Code provides in relevant part:

> [T]he court in its discretion may allow the recovery of full costs by or against any party.... The court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

willful, Mr. Kowalczyk undertakes a heavy burden. The district court's finding of willfulness is a factual determination that we cannot reverse unless clearly erroneous. *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1115 (2d Cir.1986); *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir.1985); *see Hearst Corp. v. Stark*, 639 F.Supp. 970, 980 (N.D.Cal.1986) (determination of willfulness is a question of fact); *see also* Fed.R.Civ.P. 52(a). Indeed, Mr. Kowalczyk concedes that the clearly erroneous standard governs our review. Appellant's Br. at 14. In applying this standard, we must remember that a trial judge, in making such factual determinations, has every right to choose between two permissible views of the evidence. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). Moreover, when the trial judge's findings are based primarily on oral testimony, the appellant's burden is especially great because the trial judge had the opportunity to evaluate the demeanor and credibility of witnesses. *Indiana State Employee's Ass'n v. Negley*, 501 F.2d 1239, 1242 (7th Cir.1974).

The Copyright Act does not define the term "willfully" as it is employed in the operative section, 17 U.S.C. § 504. Nor does this case require that we formulate any comprehensive definition.[10] Here, the trial judge explicitly found that, whatever Mr. Kowalczyk believed at the time of his first refusal, he clearly came to know his obligations. The district judge, in addressing the issue of willfulness in his written opinion, specifically stated:

> In the present case, defendant violated the copyright laws despite ASCAP's repeated efforts—by letter, telephone, and personal visits—to license defendant's establishment. Defendant's initial refusal may have come from ignorance of the intricacies of copyright law. However, defendant certainly came to understand his obligations under the law. Yet, his answer, time and time again, was essentially—"Sue me. I am never going to join." Given this cavalier attitude, the defendant's infringing conduct can only be described as willful.

*International Korwin Corp. v. Kowalczyk*, 665 F.Supp. 652, 659 (N.D.Ill.1987).

The record contains ample evidence to support the finding of the district judge. ASCAP contacted Mr. Kowalczyk at least eight times by mail between February 5, 1980 and June 24, 1983. These letters generally included explicit references to federal copyright laws, contained a fully-prepared license, and contained a rate schedule. In addition, ASCAP representatives made several unsuccessful attempts to contact Mr. Kowalczyk by telephone and by personal visitation. Nevertheless, Mr. Kowlaczyk made no inquiry into the validity of ASCAP's claims. For example, he did not seek the counsel of an attorney[11] or

---

**10.** Judge Cardamone summarized the differing views in *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110 (2d Cir.1986):

> One commentator has concluded that "willfully" means with knowledge that defendant's conduct represents an infringement. *See* 3 Nimmer § 14.04[B][3] at 14–28. Defining knowledge, several district courts have held that something less than proof of actual knowledge will suffice to establish knowledge and, hence, willfulness. For example, one court found a willful infringement based upon the infringer's position—itself a publisher of a copyrighted newspaper—and its failure to appear and defend in the copyright action. *Fallaci [v. New Gazette Literary Corp.]*, 568 F.Supp. [1172,] 1173 [S.D.N.Y.1983]. Another court held that "reckless disregard" for the copyright holder's rights establishes knowledge of the infringement. *Lauratex Textile*

*Corp. v. Allton Knitting Mills, Inc.*, 519 F.Supp. 730, 733 (S.D.N.Y.1981). *Id.* at 1115.

**11.** For this reason, Mr. Kowalczyk's reliance on *Turnpike Tom v. Kings Court, Inc.*, 1 U.S.P.Q.2d 1227 (E.D.Va.1986) is inapposite. There, the court found that the defendant, a small tavern owner, had relied on the advice of his attorney that he did not need a license. Accordingly, the defendant did not act recklessly in disregard of plaintiff's copyrights, nor did he have uncontroverted knowledge that he violated federal law. Similarly, in *Broadcast Music, Inc. v. Coco's Dev.*, 212 U.S.P.Q. 714 (N.D.N.Y.1982), the defendant was not willful because "he was not aware nor had he reason to believe that his acts constituted an infringement of copyright. There is nothing in this record to suggest that defendant had received prior notification from plaintiff that permitting a disk jockey to play

contact ASCAP to request more information pursuant to ASCAP's explicit invitation to do so. Instead, he merely passed the matter off as a nuisance. In relying on this pattern of conduct as evidence of the defendant's willfulness, the district court was following the approach of other district courts that have considered such evidence as relevant on the issue of willfulness. *See Music City Music v. Alfa Foods, Ltd.*, 616 F.Supp. 1001, 1003 (E.D.Va.1985) ("It is clear that defendant's actions were willful. Defendant was notified on numerous occasions both by letter and by visits from ASCAP representatives that it was violating the copyright laws."); *see also Halnat Pub. Co. v. L.A.P.A., Inc.*, 669 F.Supp. 933, 937 (D.Minn.1987) ("Plaintiffs contend, and defendants do not appear to dispute, that the infringements were willful and knowing. Between September 1974 and January 1986, ASCAP representatives had four telephone conversations with Fay Sandvig [a managing agent] and sent eleven letters to L.A.P.A., Inc. informing defendants that their conduct constituted copyright infringement, threatening legal action, and offering to let defendants' license the copyrighted works so that they could be played at defendants' club."); *Rodgers v. Eighty Four Lumber Co.*, 623 F.Supp. 889, 892 (W.D.Pa.1985) ("We find the evidence supports the conclusions that the infringements were deliberate and wilful; they continued after many warnings and showings of specific proofs; they continued after specific denials that any music was currently being played. Finally, we find that defendant avoided responses to many notices and did not negotiate for a license in good faith."); *Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F.Supp. 958, 963 (N.D.Ill.1985) ("Niro's provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI. This behavior indicates a willful disregard of copyrights held by BMI and should be permanently enjoined.").[12]

Moreover, contrary to Mr. Kowalczyk's protestations, it is clear that the district judge did not rely solely on the fact that ASCAP repeatedly had brought the violations to Mr. Kowalczyk's attention. Having had the opportunity to hear Mr. Kowalczyk's testimony and to observe his demeanor on the witness stand, the district judge simply did not believe him:

> I am going to be required to make a determination that the defendant in this case was not a credible witness as to the testimony that he at least attempted to give from the witness stand.... He came very far from convincing me that he really made any honest mistake at all.

Tr. at 200.

█ This estimation of the defendant's credibility[13] is especially important with re-

---

records in the restaurant would infringe plaintiff's exclusive license or otherwise infringe the copyrights." *Id.* at 715.

**12.** Broadcast Music, Incorporated (BMI), "which operates in much the same manner as ASCAP," *Broadcast Music, Inc. v. Columbia Broadcasting Sys.*, 441 U.S. 1, 5, 99 S.Ct. 1551, 1555, 60 L.Ed.2d 1 (1979), is a "'performing rights organization' that licenses nondramatical musical works on behalf of copyright owners under 17 U.S.C. § 110 *et seq.* Under this arrangement, BMI pays a fee to the copyright owner, charges a fee for nonexclusive licenses to perform copyrighted musical compositions, and enforces infringements of BMI held copyrights." *Niro's Palace*, 619 F.Supp. at 960.

**13.** The following is the relevant part of the court's statement:

THE COURT: Well, this has been a relatively short trial, and the trial was made necessary because there were some fact questions, at least I assumed at the time that I denied the motion for summary judgment that there were some fact questions that would be in dispute. And it was certainly on that basis that I set the matter down for trial and brought the plaintiff and the defendant in here to give me the full picture as to what occurred and put me in the position of a fact-finder.

However, as this trial has demonstrated, there were no real essential facts in dispute, and this trial has demonstrated—let me say this: I assumed all the way along that there would be some at least questions of fact as to whether or not what notices were given and that type of thing, although the pretrial material alerted me to the fact that at least the plaintiff was making the claim here that this man had been warned not once but any number of times and was given about three years' time to make a determination as to whether or not he was *going* to join ASCAP and pay

spect to his contention that he relied in good faith upon the exemption contained in section 110(5) of the Act.[14] The record certainly supports a finding that Mr. Kowalczyk held no such good faith belief. At no time prior to the commencement of this action did Mr. Kowalczyk indicate that he relied on this exemption.[15] Indeed, it is not even suggested that he was *aware* of the exemption prior to the litigation. *See Hospital for Sick Children v. Melody Fare Dinner Theatre*, 516 F.Supp. 67, 72 (E.D. Va.1980) (justification discovered after commencement of lawsuit insufficient for a finding of good faith); *see also* M. Nimmer & D. Nimmer, 3 *Nimmer on Copyright* § 14.04[B][3] at 14–30.7 n. 28 (1987) ("One may not avoid a finding of willfulness by the assertion of a reasonable ... legal defense if such defense was determined only after the act of infringement occurred."). Indeed, it appears that Mr. Kowalczyk did not raise the exemption as a defense until his second brief was filed in opposition to the plaintiffs' motion for summary judgment. Appellees' Br. at 7 n. 3. Moreover, we do not believe that the circumstances

surrounding the infringement in this case made the existence of an infringement such a "close call" that the defendant would have been justified in relying on the exemption without any further investigation. Indeed, it was quite reasonable for the district court to determine that Mr. Kowalczyk "certainly came to understand his obligations under the law." *Kowalczyk*, 665 F.Supp. at 659. There is sufficient evidence in the record to support the finding of the district judge that the violation was willful.

### B. *Damages*

#### 1. Contentions of the Parties

Mr. Kowalczyk next contends that the district court's damage award is impermissible. In addition to arguing that his reliance on the section 110(5) exemption was reasonable, he argues that the district court's award was prompted by a motive to punish him. Finally, he argues that the award was an abuse of the court's discretion because it represented approximately three times the amount it would have cost

his fee or whether he was to litigate. And there isn't any question that he made the choice, even a conscience [sic] choice, to come in here and litigate.

Now, coming in here and litigating at least required him to be fair with the Court in connection with the testimony that he was to give in this proceeding, so that I could at least rely on him when he took the witness stand to give me at least some credible story that would justify some kind of a defense in this case.

Now what's happened in this courtroom has been, and it's going to be my function as the fact-finder to make a determination as to the credibility of the witnesses who have testified, and particularly the credibility of the defendant in connection with the defense at least that he attempted to assert here, and in every place that I can think of in this case there's been a disputed question of fact.

I am going to be required to make a determination that the defendant in this case was not a credible witness as to the testimony that he at least attempted to give from the witness stand in which he denied and he told the Court, told me sitting over here that the testimony that he was giving in this courtroom constituted the truth, whereas the fact is that not only in this courtroom did he give certain testimony, but he gave testimony also at the time his deposition was taken. And when

reminded of that testimony, he had the opportunity at least to say, "Well, I must have made a mistake or something," and he attempted to do it. He came very far from convincing me that he really made any honest mistake at all.

What he did in this courtroom was to categorically deny that he had received this number of documents that were—and then produced in this case showing that not only once but any number of times—I don't even want to count them—he was told that he was violating the act, and his answer was, "Go ahead. Do what you want to. And I'm not going to join." And he did that time after time after time.

And so on the question of wilfulness, there is no question in my mind that this was an absolutely wilful violation of the act, that he was aware of what the facts were. And so on the question of credibility, I've made my finding, and I find him less than a credible witness.

Tr. at 198–201.

**14.** *See supra* note 5.

**15.** Although the district court did not address the issue in its decision, at oral argument before us Mr. Kowalczyk's counsel admitted that there is nothing in the record which indicates that Mr. Kowalczyk refused to obtain a license because he relied on the section 110(5) exemption.

him to purchase a license from ASCAP. The plaintiffs, however, contend that the court did not abuse its discretion because the damages awarded were well within the statutory limits set by Congress, regardless of whether the infringement was willful.

### 2. Analysis

Section 504(c)(1) permits a court, in the exercise of its discretion, to award between $250 to $10,000 per infringement to a prevailing plaintiff.[16] However, if the court finds that the infringement was willful, the statute authorizes the court to award up to $50,000 per violation.[17] 17 U.S.C. § 504(c)(2). In *Harris v. Emus Records Corp.*, 734 F.2d 1329 (9th Cir.1984), the Ninth Circuit summarized the law governing these contentions:

> The [district] court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima. *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed.2d 499 (1919). The award will be overturned only for abuse of discretion.... The trial court is in a better position than are we to determine appropriate damages.

*Id.* at 1335 (citation omitted; footnote omitted).

▉ The damages awarded here ($1,500 per infringement) fall squarely within the statutory scheme established by Congress. Indeed, they are substantially below the amount that is authorized by statute—$50,000 for *each* violation. Moreover, the damages only were approximately three times the amount that a properly purchased license would have cost Mr. Kowalczyk over the relevant period. When, as here, the violation is willful, deterrence of future violations is a legitimate consideration. As the district court noted, "courts have repeatedly emphasized that defendants must

not be able to sneer in the face of copyright owners and copyright laws. Rather, defendants must 'be put on notice that it costs less to obey the copyright laws than to violate them.'" *Kowalczyk*, 665 F.Supp. at 659 (quoting *Music City Music v. Alfa Foods, Ltd.*, 616 F.Supp. 1001, 1003 (E.D. Va.1985)); *see F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952) ("The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct."). The district court acted well within its discretion in determining the amount of damages.

### C. Attorney's Fees

#### 1. Contentions of the Parties

Mr. Kowalczyk's final contention is that the district court abused its discretion in awarding the plaintiffs over $21,500 in attorney's fees. He again claims that the district court erroneously determined that the violation was willful and suggests that, without such a finding, attorney's fees would not have been awarded. He also submits that, since section 110(5) had not been the subject of much litigation, he was entitled to litigate the issue, especially since the defendants had stipulated (although later withdrew) that the receiver in Mr. Kowalczyk's establishment was a home-type receiver. Finally, he challenges the amount of the award. In response, the plaintiffs contend that the award of attorney's fees did not constitute an abuse of the district court's discretion. They also submit that Mr. Kowalczyk's willfulness, coupled with his improper conduct prior to trial—which thwarted resolution of the action at the summary judgment phase—compel this court to affirm the award of attorney's fees.

---

16. *See supra* note 8.

17. *See supra* note 8. In addition to authorizing up to $50,000 per violation for willful infringers, the statute permits, at the court's discretion, a lesser amount, "not less than $100," if "the

infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright...." 17 U.S.C. § 504(c)(2).

## 2. Analysis

█ The awarding of attorney's fees and costs is explicitly provided for under the Copyright Act: "[T]he court in its discretion may allow the recovery of full costs by ... any party [and] ... may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The language of the statute does not contain an explicit requirement that the district court must find "bad conduct" or "willfulness" on the part of the defendant as a predicate to awarding such fees. *See id.; Casella v. Morris*, 820 F.2d 362, 366 (11th Cir.1987); *cf. Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 122 (8th Cir. 1987). There is a division of authority with respect to the circumstances under which an award is appropriate.[18] This case does not require that we confront definitively this broad question. In this circuit, it is established that a finding of willfulness is sufficient to support the award of attorney's fees. *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir.1983). Moreover, the district court, in awarding fees, also noted that the defendant's handling of the summary judgment proceedings unnecessarily had required trial.[19]

> Defendant's deposition, and [the two musicians'] affidavits were instrumental in the court's decision to deny plaintiffs' motion for summary judgment. Defendant had stated in his deposition that the Orbit only had four speakers, thereby seriously calling the *Aiken* "outer limit" into play, and [the musicians] each denied

playing plaintiffs' music. Yet, these facts were not borne out at trial as defendant admitted that the Orbit has eight working speakers, and without any explanation, failed to produce either [musician].

*Kowalczyk*, 665 F.Supp. at 659 n. 3 (citation omitted).[20]

We also believe that the district court did not abuse its discretion in determining the amount of the attorney's fee award. Several factors beyond the plaintiffs' control increased their attorney's fees. As we already have noted, the district judge determined that the defendant could have obviated the need for trial if more attention had been given to the accuracy of his summary judgment submissions. Moreover, at trial, Mr. Kowalczyk's refusal to stipulate to uncontested facts undoubtedly prolonged both preparation and presentation efforts of the plaintiffs. For example, the plaintiffs had to prepare to contest (1) whether ASCAP did notify Mr. Kowalczyk that his conduct violated federal copyright law; (2) whether the musical compositions at issue actually were performed; and (3) whether there were more than four speakers in use during the infringements. We also note that the district court gave the fee petition careful scrutiny. After a thorough review of the petition, largely unaided by defense counsel,[21] the court reduced the requested fees, with substantive commentary, in no less than seven areas. We cannot conclude that the court abused its discretion in

---

**18.** Some courts have held that absent a showing of bad faith on the part of the losing party, no attorney's fees should be granted to the prevailing party in a copyright case. *See Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 493 (9th Cir.1985); *Kenbrooke Fabrics, Inc. v. Material Things*, 223 U.S.P.Q. 1039 (S.D. N.Y.1984). On the other extreme, however, are those cases holding that attorney's fees routinely should be awarded to the prevailing party. *See Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir.1985); *Warner Bros. v. Lobster Pot, Inc.*, 582 F.Supp. 478, 484 (N.D.Ohio 1984).

**19.** With respect to the withdrawn stipulation on the capacity of the radio receiver, the district court pointed out:

> [E]ven had the stipulation remained in effect, given the remaining uncontroverted evidence

concerning the size of the Orbit, its annual revenues, the number of speakers, and the location of the speakers, defendant still would not have had a credible, good faith basis for asserting the [§ 110(5) ] exemption.

*Kowalczyk*, 665 F.Supp. at 659.

**20.** *See also supra* note 13.

**21.** As the district court commented in addressing the plaintiffs' fee petition, defense counsel "respond[ed] in a very general fashion and without detailing where the court should pare this voluminous [23 page] request, [and] has effectively thrown up their hands and left this arduous task for the court." *Kowalczyk*, 665 F.Supp. at 660.

awarding the plaintiffs the instant attorney's fees.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.